UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INDERPAL SINGH, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>YUHE INTERNATIONAL, INC., GAO ZHENTAO, HU GANG, JIANG YINGJUN, PETER LI, LIU YAOJUN, GREG HUETT, HAN CHENGXIANG, CHILD VAN WAGONER, & BRADSHAW, PLLC, ROTH CAPITAL PARTNERS, LLC, RODMAN & RENHAW, LLC, and BREAN, MURRAY, CARRET & CO.,<br><br>　　　　　　　Defendants. | Civil Action No. 11-CV-4526-JGK |

**MEMORANDUM IN SUPPORT OF KEVIN CARROLL'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
<u>AND APPROVAL OF HIS CHOICE OF LEAD COUNSEL</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 5

I. THE COURT SHOULD APPOINT CARROLL AS LEAD PLAINTIFF FOR THE CLASS ........ 5

A. Carroll Has Met The Procedural Requirements Of The PSLRA ........ 5

B. Carroll Has The Largest Known Financial Interest In The Relief Sought By The Class ........ 6

C. Carroll Satisfies The Requirements of Rule 23 ........ 7

1. Carroll Satisfies the Typicality Requirement of Rule 23 ........ 7

2. Carroll Satisfies The Adequacy Requirement of Rule 23 ........ 8

II. THE COURT SHOULD APPROVE CARROLL'S SELECTION OF LEAD COUNSEL ........ 9

CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**Cases**

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
    236 F.R.D. 188 (S.D.N.Y. 2006) .................................................................................... 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ........................................................................................... 9

*In re McDermott Int'l Sec. Litig.*,
    2009 WL 579502 (S.D.N.Y. Mar. 6, 2008) .................................................................... 7

*In re IPO Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................................ 7, 8

*Lowinger v. Global Cash Access Holdings, Inc.*,
    No. 08 Civ. 3516 (SWK),
    2008 WL 2566558 (S.D.N.Y. June 26, 2008) ................................................................ 7

*Olsen v. New York Cmty. Bancorp, Inc.*,
    233 F.R.D. 109 (E.D.N.Y. 2005) .................................................................................... 8

**Rules**

17 C.F.R. § 240.10b-5 ............................................................................................................ 1

Fed. R. Civ. P. 23 .......................................................................................................... passim

**Statutes**

15 U.S.C. § 77z-1(a)(3)(A) ................................................................................................ 5, 6

15 U.S.C. § 77z-1(a)(3)(B) .............................................................................................passim

15 U.S.C. § 78u-4(a)(3) ......................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................................ 5, 6

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................passim

**Other Authorities**

Statement of Managers – The "Private Securities Litigation Reform Act of 1995,"
    141 Cong. Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 35, 104 Cong.
    1 Sess. *reported in* 1995 U.S.C.C.A.N. 730 (Nov. 28, 1995) ....................................... 9

**PRELIMINARY STATEMENT**

Kevin Carroll ("Carroll") respectfully submits this Memorandum in support of his Motion: (1) to appoint Carroll as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1(a)(3)(B) and 78u-4(a)(3)(B); and (2) for approval of Carroll's selection of Berman DeValerio as Lead Counsel for a class (the "Class") described herein.

The above-captioned securities class action is brought on behalf of: (1) purchasers of Yuhe International Inc. ("Yuhe" or the "Company") common stock during the period from December 31, 2009 through and including June 17, 2011 (the "Class Period"); and (2) purchasers in Yuhe's public stock offering, commencing in October 2010, of more than $25 million in common stock (the "October Offering"). Two additional and factually similar securities class actions have been filed in the U.S. District Court for the Southern District of Florida and the U.S. District Court for the Central District of California.[1] Those actions assert claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5 ("Exchange Act Claims"). The complaint pending here also asserts Exchange Act Claims and claims for violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. As alleged in the pending action, Defendants caused the price of Yuhe stock to be artificially inflated during the Class Period and in the October Offering by issuing materially false and

---

[1] These actions are *Wilson v. Yuhe Int'l Inc.*, No. 1:11-cv-22305 (S.D. Fla.), filed June 24, 2011, and *Feyco v. Yuhe Int'l. Inc.*, No. 2:11-cv-05511 (C.D. Cal.), filed July 1, 2011. Carroll has filed motions substantially similar to this one in the Southern District of Florida and the Central District of California. If selected as Lead Plaintiff, Carroll will file a motion with the Judicial Panel on Multidistrict Litigation to transfer all related Yuhe securities actions to a single district.

misleading statements and omitting to disclose material facts that misled shareholders regarding the Company's business operations, financial condition, and prospects.

Carroll seeks appointment as Lead Plaintiff in the pending action and approval of his selection of Berman DeValerio as Lead Counsel for the Class. Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also makes a *prima facie* showing that it is an adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Carroll respectfully submits that he is the "most adequate plaintiff" given his significant losses, totaling $40,270, from his investment in Yuhe stock during the Class Period.[2] Further, Carroll satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. In addition, Carroll has selected and retained Berman DeValerio, a law firm with significant experience in prosecuting securities fraud class actions, to serve as Lead Counsel for the Class.

As such, Carroll respectfully requests the Court appoint Carroll as Lead Plaintiff and grant his selection of Berman DeValerio as Lead Counsel.

## STATEMENT OF FACTS

Defendant Yuhe is a Nevada corporation with its principal place of business in Hanting District, Weifang, Shandong Province, People's Republic of China. At all relevant times, Yuhe was a supplier of day-old chickens to meat producers in China. Prior to the Company's trading

---

[2] A copy of the PSLRA-required Certification submitted by Carroll (the "Carroll Certification") is attached as Exhibit B to the Declaration of Jeffrey C. Block ("Block Decl."). The Carroll Certification sets forth Carroll's transactions in Yuhe stock during the relevant period. In addition, a chart reflecting calculations of Carroll's financial losses from his trading in Yuhe stock is attached as Exhibit C to the Block Decl.

being suspended on July 21, 2011 and delisted on August 9, 2011, Yuhe's stock traded on the NASDAQ stock market under the ticker symbol "YUII."

The pending action charges that Defendants misled Yuhe's investors by materially overstating the Company's financial results and misrepresenting its business operations. In particular, it is alleged that Yuhe misled investors by, *inter alia*: (1) falsely claiming that the Company had acquired thirteen chicken breeding farms in December 2009 from a company called Weifangshi Dajiang Qiye Group Co. Ltd. ("Dajiang") that would substantially increase Yuhe's chicken production capacity; (2) engaging in impermissible and undisclosed off-balance-sheet transactions; and (3) failing to disclose that the Company lacked adequate and appropriate internal controls with respect to financial reporting and related party transactions.

The truth about Yuhe began to emerge on June 13, 2011, when a financial analysis website, GEO Investing, released a scathing report raising serious concerns about Yuhe's acquisition of chicken breeding farms from Dajiang (the "GEO Report"). According to the GEO Report, the "Chairman and General Manager of Dajiang [who purportedly sold the farms to Yuhe] categorically stated that there never was an agreement for YUII to acquire Dajiang's farms" and concluded that "YUII may have misappropriated $12.1 million in the Dajiang acquisition and had misled investors regarding the details surrounding that transaction."

The GEO Report also stated that Mr. Zheng, the Chairman and General Manager of Dajiang, claimed that a Yuhe representative told him that the Company "was in the process of **raising capital** in the US markets and having an acquisition of Dajiang's farms **would help that process**." Zheng further stated that the Yuhe represented asked him to "**do them [Yuhe] a favor**" by helping Yuhe "come up with a deal that would be attractive to US investors." According to the GEO Report, "YUII proposed a **fake deal** which would result in Dajiang's

3

farms being listed under YUII's name." (Emphasis in original.) Rather than purchase the farms, Yuhe would rent the farms from Dajiang or enter into a joint venture so that Yuhe could claim ownership of the farms. The GEO Report concluded that, "we do not consider YUII shares as investable" given large, unquantified risks. On this news, Yuhe's stock price plunged by more than 12% from its June 10, 2011 closing price of $4.23 per share (the last prior trading day), to close at $3.69 per share on June 13, 2011.

The next day, on June 14, 2011, Yuhe responded to the GEO Report with a press release that claimed the Company had provided "Chinese documents as evidence of its acquisitions conducted in December 2009, when it entered into an agreement to purchase 13 breeder farms from Weifang Dajiang Corporation, for total acquisition consideration of approximately $15.2 [sic]." Two days later, before markets opened on June 16, 2011, Yuhe issued an additional press release asserting that the Company had, in fact, acquired chicken breeding farms from Dajiang in December 2009 and purporting to provide "incremental documentation" supporting that claim.

On June 16, 2011, before markets opened, the financial website SeekingAlpha.com published another research report from GEO Investing that made similar claims as the original GEO Report against Yuhe. Later that same day, before markets closed, Global Hunter Securities LLC, an analyst firm that had previously covered Yuhe, indicated that it was suspending coverage of the Company. Global Hunter stated that following the GEO Report, they contacted Dajiang's chairman, Mr. Zheng, and independently confirmed what had been reported in the GEO Report; the breeding farm transaction with Yuhe "did not take place." Global Hunter's Report further stated that that Dajiang "has not received any of the $12MM of the proceeds, that [Zheng's] signature had been forged on the documents provided by the company and that he

4

intends to sue Yuhe." These disclosures caused Yuhe's stock price to dive more than 51%, from $4.08 per share on June 15, 2011 to a closing price of $1.96 per share on June 16, 2011.

The next day, June 17, 2011, Yuhe held an investor conference call and admitted that the December 2009 breeding farm transaction with Dajiang never occurred, and that the Company engaged in a cover-up to conceal this fact. Defendant Jiang, Yuhe's Chief Accounting Officer, acknowledged that the Company was "worried that the cancellation of the contract and refunded cash would provoke negative reactions from the capital market, so that we decided to reside the money in a private company under Yuhe Group." Defendant Gao, Yuhe's CEO, further disclosed that the Company took additional steps to cover up the failed acquisition of Dajiang's farms and admitted that Yuhe failed to disclose the failed Dajiang transaction in a timely manner, stating that "management wasn't familiar with the disclosure policy." Defendant Hu, Yuhe's CFO, further admitted that the failure to acquire Dajiang's farms "happened after our previous auditor Grant Thornton resigned, so [the] CEO worried that a retracted contract would increase negative investor sentiments and adversely affected the share price." Following these admissions, Yuhe's stock price fell another 38% to close at $1.21 per share on June 17, 2011.

As a result of Defendants' wrongful acts and omissions, Carroll and the other Class members have suffered significant damages.

## ARGUMENT

### I. THE COURT SHOULD APPOINT CARROLL AS LEAD PLAINTIFF FOR THE CLASS

#### A. Carroll Has Met The Procedural Requirements Of The PSLRA

The PSLRA sets forth detailed procedures for the selection of a Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3); 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial complaint must, within 20 days of filing the action, publish a notice to the class informing class members of

their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i). The plaintiff in the related action filed in the U.S. District Court for the Southern District of Florida, *Wilson v. Yuhe Int'l Inc.*, No. 1:11-cv-22305 (S.D. Fla.), published a notice on *Business Wire* on June 24, 2011, the day the initial complaint in that matter was filed. That notice, in accordance with the PSLRA, stated that applications to serve as Lead Plaintiff must be made no later than 60 days from the date on which the notice was published. Plaintiff in the above captioned action published a notice on *Business Wire* on July 1, 2011, the day that the initial complaint was filed in this action. That notice indicated an August 23, 2011 lead plaintiff filing deadline. Both notices are attached as Ex. A to the Block Decl.

The PSLRA provides that any member or members of the purported class may move the court to serve as Lead Plaintiff within 60 days after publication of the required notice. 15 U.S.C. § 77z-1(a)(3)(A); 15 U.S.C. § 78u-4(a)(3)(A). Carroll has accordingly satisfied the procedural requirement of the PSLRA by filing this Motion seeking appointment as Lead Plaintiff within the requisite time frame.

### B. Carroll Has The Largest Known Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest" in the relief sought by the Class, has made a *prima facie* showing that it is an adequate and typical Class representative under Rule 23 of the Federal Rules of Civil Procedure, and, as discussed above, has either filed a complaint or a motion seeking Lead Plaintiff status. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

To the best of his knowledge, Carroll believes that he has the largest financial interest in this litigation by any qualified movant seeking appointment as Lead Plaintiff. Specifically, Carroll purchased 29,000 shares of Yuhe stock during the Class Period at a cost of $73,968, and suffered a loss of $40,270. *See* Block Decl., Exs. B and C. Accordingly, Carroll has the largest financial interest in the relief sought of any qualified movant seeking appointment as Lead Plaintiff for the Class.

### C. Carroll Satisfies The Requirements of Rule 23

The PSLRA requires that the movant with the largest financial interest must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23." *In re McDermott Int'l Sec. Litig.*, 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009) (citing *In re IPO Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)). In this case, Carroll satisfies both requirements.

#### 1. Carroll Satisfies The Typicality Requirements Of Rule 23

Carroll's claims are typical of the claims of other Class members. "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Lowinger*, 2008 WL 2566558, at *3 (citing *IPO*, 214 F.R.D. at 121. For instance, Carroll, like other Class members, seeks to hold Defendants liable for the consequences of their violations of the federal securities laws. In addition, there are no facts which indicate any conflicts of interest between Carroll and the other Class members. Indeed, the events and course of conduct that give rise to Carroll's claims are the same events and course of conduct that give rise to the claims of the Class; to wit, the false and misleading statements and material omissions regarding significant material adverse facts about Yuhe's financial and operational

7

condition, the use of improper off-balance sheet arrangements to conceal the non-existent Dajiang transaction, unreported material related party transactions and related accounting irregularities, compliance with GAAP, and internal controls.  As a result of these material misstatements and/or omissions, Carroll, like the other Class members, purchased Yuhe stock at artificially inflated prices.

Lastly, Carroll suffered losses as a result of the alleged misconduct.  *See, e.g., Glauser*, 236 F.R.D. at 188-89 (finding a lead plaintiff movant's claim to be typical where the movant, "like all class members, (1) purchased or acquired [the Company's] securities during the proposed class period, (2) at prices allegedly artificially inflated by Defendants' false and misleading statements and/or omissions, and (3) suffered damages thereby.").

### 2.  Carroll Satisfies The Adequacy Requirement Of Rule 23

Carroll likewise satisfies the adequacy requirement of Rule 23, which is satisfied where "class counsel is qualified, experienced, and generally able to conduct the litigation," "the class members' interests are not antagonistic to one another" and "the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Olsen*, 233 F.R.D. at 109 (citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)).  Carroll satisfies each of these elements of the adequacy requirement.

Carroll is an adequate Class representative because he has obtained counsel that is highly experienced in the area of securities litigation and class action lawsuits, his interests are perfectly aligned with those of the other Class members and are not antagonistic in any way, and he has a sufficient interest in the outcome of the case to ensure vigorous advocacy.  More specifically, Carroll has retained Berman DeValerio to represent him in the instant action.  Berman DeValerio has successfully prosecuted numerous securities fraud class actions and obtained excellent

recoveries on behalf of defrauded investors.  Berman DeValerio has the skill and knowledge that will enable them to prosecute this Action effectively and expeditiously.  *See* Block Decl., Ex. C.

Moreover, there are no facts suggesting that any actual or potential conflict of interest or other antagonism exists between Carroll and the other Class members.  In fact, Carroll has submitted a Certification in which he affirms his understanding of the duties he owes to the Class, and has expressed his commitment to oversee the prosecution of the instant litigation.  *See* Block Decl., Ex. B.  Through this Certification, Carroll accepts the fiduciary obligations he will undertake if appointed Lead Plaintiff in this action.

In sum, Carroll, having the largest financial interest and satisfying both the typicality and adequacy requirements of Rule 23, should be appointed as Lead Plaintiff for the Class.

## II. THE COURT SHOULD APPROVE CARROLL'S SELECTION OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the court.  15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig*., 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").  Consistent with Congressional intent, a court should not disturb the Lead Plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class."  *See* Statement of Managers – The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 35, 104 Cong. 1 Sess. *reported in* 1995 U.S.C.C.A.N. 730, 734 (Nov. 28, 1995).

Here, Carroll has selected Berman DeValerio to serve as Lead Counsel for the Class. Berman DeValerio is highly experienced in the area of securities class action litigation, and has

9

successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors, including many cases in this District.  Further, Berman DeValerio has the skill and knowledge that will enable them to prosecute this Action effectively and expeditiously.  *See* Block Decl., Ex. C.  The Court may be assured that by approving Carroll's choice of counsel, the Class will receive the highest caliber of legal representation.  Accordingly, the Court should approve Carroll's selection of Berman DeValerio as Lead Counsel for the Class.

## CONCLUSION

Carroll respectfully requests that the Court: (1) appoint Carroll as Lead Plaintiff for the Class pursuant to the PSLRA; (2) approve Carroll's selection of Berman DeValerio to serve as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: August 23, 2011

Respectfully submitted,

**BERMAN DEVALERIO**

/s/ Jeffrey C. Block
Jeffrey C. Block (JBC-0387)
Leslie R. Stern
Steven J. Buttacavoli
One Liberty Square
Boston, MA 02109
Telephone:  (617) 542-8300
Facsimile:  (617) 542-1194
Email: jblock@bermandevalerio.com

*Counsel for Proposed Lead Plaintiff Kevin Carroll and Proposed Lead Counsel for the Class*