UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INDERPAL SINGH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YUHE INTERNATIONAL, INC., GAO ZHENTAO, HU GANG, JIANG YINGJUN, PETER LI, LIU YAOJUN, GREG HUETT, HAN CHENGXIANG, CHILD VAN WAGONER & BRADSHAW, PLLC, ROTH CAPITAL PARTNERS, LLC, RODMAN & RENHAW, LLC and BREAN, MURRAY, CARRT & CO.,<br><br>Defendants. | No. 1:11-cv-04526-JGK |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION OF
MRMP-MANAGERS LLC FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

## I. INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that movants seeking to be appointed as lead plaintiff demonstrate both the "largest financial interest in the relief sought by the class" *and* "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). After two rounds of submissions, it is clear that the only movant who satisfies both the necessary prongs of the PSLRA's lead plaintiff test is MRMP Managers, LLC ("MRMP").

The only other movant that is still actively pursuing appointment as lead plaintiff, aAd Partners LP ("AADP"), claims the largest financial interest, yet falters on the second prong due to a variety of reasons, including:

- AADP is a self-described hedge-fund, which relies on a "contrarian" and thus atypical trading strategy.

- AADP's chief investment officer, Daniel Wimsatt ("Wimsatt"), engages in extensive face-to-face meetings with company management, which provides AADP access to non-public information, unlike typical investors.

- AADP maintains an apparent relationship with Roth Capital Partners ("Roth"), an underwriter of Yuhe's secondary offering during the Class Period, rendering AADP an inadequate representative unable to be entrusted with the responsibility of vigorously and zealously representing the interests of the absent putative class.

On the other hand, MRMP *is* both adequate and typical. Having suffered financial losses of more than $459,000, MRMP has a substantial and significant stake in the outcome of this litigation, ensuring its zealous advocacy on behalf of the putative class. MRMP also has made the requisite showing of its typicality and adequacy. Indeed, not a single competing movant voiced any concerns about MRMP's suitability to serve as lead plaintiff. No class member has timely proffered "proof" that MRMP "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Therefore, MRMP is the "most adequate plaintiff" and should be appointed lead plaintiff.

**II.     ARGUMENT**

While AADP's purported brief in opposition to the appointment of any of the other movants merely reiterates its own larger financial interest, a movant's financial interest is "***just a beginning point***." *In re Cable & Wireless, PLC Secs. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) (emphasis added). "The "most adequate plaintiff" is presumed to be the plaintiff who has the largest financial stake in the outcome of the case, "***so long as*** he meets the requirements of Rule 23. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (emphasis added).

**A.     MRMP Is the "Most Adequate Plaintiff"**

Because none of the competing movants challenged MRMP's showing of adequacy and typicality, these facts are deemed admitted for the purpose of this motion.[1] As the only qualified candidate, the Court should appoint MRMP as lead plaintiff.

**B.     AADP Is Not Qualified to Serve as Lead Plaintiff**

> [T]he Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy…Nor does the Reform Act authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a round-robin basis. The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate

---

[1] Movants Kevin Carroll and Daiwu Chen do not oppose MRMP's qualifications and no longer actively seek appointment themselves. Thus, only one more brief is expected to be filed on this motion – AADP's reply papers. However, any attempt by AADP to belatedly dispute MRMP's typicality or adequacy in the reply papers filed in support of its own application would be improper, and any such arguments, if advanced, should be disregarded. Courts do not condone last-minute maneuvering that sandbags one's opponent. *See, e.g., Wakefield v. Astrue*, 2008 WL 268702, at *8 (D.Ariz. Jan. 28, 2008) ("A moving party may not make arguments for the first time in its reply brief because the timing of such arguments eliminates an opposing party's ability to respond."); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004) ("Courts decline to consider arguments that are raised for the first time in reply."); *Dietrich v. Trek Bicycle Corp.,* 297 F.Supp.2d 1122, 1128 (W.D. Wis.2003) (rejecting argument first raised for the first time in a reply brief, concluding "this argument should have been raised earlier or not at all. ...").

or atypical.

*Cavanaugh*, 306 F.3d at 732.

The PSLRA further provides any member of the putative class the opportunity to come forward with "proof" that the movant with the largest financial interest either does not satisfy Rule 23's requirements or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 730.  Here, MRMP has put forth substantial and detailed proof that AADP is not qualified to serve as lead plaintiff because it is both an atypical and inadequate plaintiff, and may be subject to potentially fatal unique defenses that will, in any event, sidetrack the prosecution of the class's common claims. As stated in its opposition memorandum, D.E. 28, MRMP has provided proof that:

- **AADP is undeniably a hedge fund[2] -- an atypical investor that engages in unique trading and hedging strategies vastly different from those used by other class members.** *See, e.g.*, *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000); s*ee also In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (rejecting hedge fund movant because of its unique "trading pattern"); *Applestein v. Medivation Inc.,* 2010 WL 3749406, at *5 (N.D. Cal. Sept. 20, 2010). *See* D.E. 28 at 3-4.

- **AADP's founder and Chief Investment Officer, Daniel Wimsatt, has proudly publicized AADP's "contrarian" and atypical trading angle.** The *North County Times* article*, Hedge Fund Contrarian,* discusses Wimsatt and AADP's strategy: "Wimsatt doesn't care if everyone is running into the big trading momentum plays that are Wall Street's darlings …. What Wimsatt … does care about is what everyone else throws on the scrap heap."  D.E. 28 at 4; D.E. 29 at Exh. B.

---

[2] AADP's counsel dances around a straightforward acknowledgment of this fact, initially describing AADP as a "sophisticated institutional investor," D.E. 12 at 2, later offering the convoluted explanation that it is a "pooled investment fund operating as a limited partnership." D.E. 27 at 1. But Daniel Wimsatt, AADP's Chief Investment Officer strips away the artifice, writing unambiguously in *SeekingAlpha.com*: "By way of introduction, I run a small **hedge fund** specializing in contrarian ideas." *See* D.E. 29, Exh. A. Similarly, the first sentence of a news article published November 23, 2010, in San Diego, California's *North County Times*, titled *"Thinking ahead: Hedge Fund Contrarian Likes Stock Market Dogs"* ("*Hedge Fund Contrarian*") states: "Hedge fund manager Daniel P. Wimsatt is a contrarian," *id*., at Exh. B, and the 2010 Roth Hawaii Conference program describes Wimsatt as a "hedge fund manager." *Id*., at Exh. C.

3

- **Unlike typical Yuhe investors, AADP engaged in private discussions with Company executives during the class period, providing AADP with non-public information about Yuhe that informed AADP's investment decisions.** In an April 29, 2011, article on *SeekingAlpha.com* titled "Chicks Dig the Long Ball:  Yuhe International Inc. (YUII)," Wimsatt wrote that his interactions with defendant Zhentao Gao -- Yuhe's chief executive officer -- were so intimate that Wimsatt "looked [CEO] Gao in the eye and shook his hand with the feeling that…we were communicating very directly." D.E. 28 at 5.

- **AADP's direct and personal relationship with Yuhe's CEO, Zhentao Gao, subjects AADP to a disqualifying unique defense:** "[AADP] did not rely on public information in making [its] decision to purchase [Yuhe]." *See Beck v. Status Game Corp.*, No. 89 Civ. 2923, 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995); *see also  In re Independent Energy Holdings PLC Secs. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002).  D.E. 28 at 8 n.9.

- **AADP has relied upon information not generally available to the public, "cannot be said to have relied upon the integrity of the market," and, therefore, would be subject to a non-reliance defense to the fraud-on-the-market presumption of reliance.** *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 262 (D. Mass. 2005); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989).  D.E. 28 at 5-7.

- **AADP's meeting with Yuhe's top management and exposure to non-public information render AADP atypical and subject to unique defenses.**  "[W]hether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members." *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 314 (E.D. Va. 2007)  (emphasis added). D.E. 28 at 7.

- **Wimsatt's *SeekingAlpha.com* article attempted to boost the value of Yuhe's stock**, **to recoup AADP's significant losses**. In the *SeekingAlpha*.com article Wimsatt claimed Yuhe was undervalued, touted the Company as a solid investment, and attempted to refute potential concerns about Yuhe's operations or financial reporting, stating he had "walked away impressed from my day at YUII impressed with the level of 'manufacturing' sophistication and quality control." D.E. 28 at 9-10.

- **AADP's Daniel Wimsatt injected himself into the relevant facts of this case**.  His underlying interactions with defendants and the extent to which his *SeekingAlpha.com* article artificially (re)inflated Yuhe's stock price and directly contributed to other class members' losses raise the possibility Wimsatt will ultimately need to serve as a witness in this action. D.E. 28 at 10.

- **Wimsatt and AADP have a clear conflict of interest in their cozy relationship with Roth Capital Partners**. Roth, as an underwriter of Yuhe's October 25, 2010 secondary offering, is a defendant in *Singh v. Yuhe International Inc.*, *et al*., Case No.1:11-cv-04526-JGK -- a related action currently pending in the Southern District of New York -- and an anticipated primary defendant in this action.  If AADP is appointed lead plaintiff, it will be conflicted and may be unwilling to aggressively pursue Roth Capital Partners in this

4

litigation as a result of its relationship with Roth and repeated participation in Roth's investor junkets and special meetings with company management. Because of this conflict, AADP's interests are not aligned with those of the class D.E. 28 at 10-11.

Although only a preliminary showing of typicality and adequacy is required at this stage, "[s]ome inquiry into the facts is nonetheless necessary under Rule 23 to determine whether there is reason to believe that the presumptively most adequate plaintiff has interests at odds with the remainder of the class." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d. 1129, 1136 (C.D. Cal. 1999). Mere repetition of a movant's financial interest and conclusory statements – as was provided in AADP's "opposition" brief -- are insufficient to defend any presumption in favor of the movant with the greatest financial interest where, as here, the court is given substantial contrary proof. *Cf. Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999) (rejecting movants whose reply failed to provide information beyond "their names, a summary of the transactions...and the 'simple mathematical' conclusion that they have the largest financial interest in the case. ...Having failed to volunteer anything more than conclusory assertions about its competence to manage this case, the Group has put its adequacy of representation in doubt.")

AADP provides little assurance that it satisfies Rule 23's typicality and adequacy requirements. Indeed, despite the considerable proof MRMP has provided, demonstrating that AADP is atypical, inadequate and subject to unique defenses, AADP's opposition to the competing motions merely reiterates the hedge fund's purported qualifications in a string of conclusory statements. Indeed, desperate for *some* showing to overcome the problems associated with its status as a hedge fund which boasts access to non-public information, AADP can only rely upon another movant's withdrawal as "evidence" of its adequacy and typicality.[3]

---

[3] AADP states that movant Daiwu Chen ("Chen") withdrew his motion "recognizing that [AADP] is an appropriate lead plaintiff." *See* D.E. 27 at 1 n.1. Such an assertion is not evidence of whether

5

Here, AADP has made little effort to buttress its application or establish its *bona fides*. Instead, AADP has left this Court in the dark, and simply asks it to "presume" AADP is typical and adequate – something a court should not do. *See In re Cendant Corp. Litig,* 264 F.3d 201, 264 (3d Cir. 2001) (court may not simply "'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies [Rule 23's] typicality and adequacy requirements").

Because MRMP has provided proof that AADP is not "most capable of adequately representing the interests of class members," AADP's motion should be denied. 15 U.S.C. §78u-4(a)(3)(B)(i)(II). Consequently MRMP, the movant with the second-largest financial interest, and the only movant that satisfies the requirements of Rule 23, should be appointed lead plaintiff.[4]

---

AADP may properly serve. AADP's relationship to Chen's counsel has curiously evolved. Just last month, in *Hammond v. Wonder Auto Technology, Inc.*, *et al.*, Case No. 11-cv-03687-DAB, a securities class action pending in this District before the Honorable Deborah A. Batts, movant Chen's counsel (on behalf of a different client) staunchly opposed AADP's appointment as lead plaintiff based on many of the same disqualifying factors that MRMP has raised here. *See* Gonsiorowski Reply Declaration, attached hereto, at Exh. A. Chen's counsel noted, among other things, AADP's atypical trading strategy, its access to non-public information, and Wimsatt's personal visits with company management before making investment decisions, concluding that "[c]ertainly, aAd Partners $8 million investment…included face-to-face meetings with senior management of [the company]." *Id*. Chen's counsel also emphasized: "At the lead plaintiff stage, a unique defense need not be actually proven. A lead plaintiff movant may be disqualified as atypical simply if the defense is likely to be a focus of the litigation." *Id*. Oddly, only 11 days after raising these objections, Chen's counsel withdrew its opposition to AADP in the *Hammond* case, reversing its position and stating, without explanation, that "AADP Partners…has otherwise satisfied the requirements of Rule 23." *See* Gonsiorowski Reply Declaration at Exh. B. This sudden transformation occurred only four days before Chen withdrew in favor of AADP in this case. *See* D.E. No. 25. Whatever the reason for these remarkable, 180-degree turnarounds, Chen's statement in support of AADP should carry absolutely no weight.

[4] As indicated in its opposition memorandum, *see* D.E. 28 at 11-12, and in light of AADP's serious afflictions, at a minimum, the Court should permit discovery from AADP and Wimsatt concerning AADP's suitability to serve as lead plaintiff. MRMP has established a more-than-reasonable basis for this request, in order "to determine whether or not [AADP] is a typical investor." *Applestein v. Medivation, Inc*., 2010 WL 3749406, at *5 (N.D. Cal. Sept. 20, 2010). As noted herein, AADP's opposition to the competing motions fails to address -- or even acknowledge -- any of these issues. Consequently, if AADP is appointed as lead plaintiff, there is high probability that the members of the putative class will be saddled with needless litigation over AADP's unique vulnerabilities.

### C. AADP, A Hedge Fund, Is Not The Type Of Institutional Investor Preferred By Congress To Serve As Lead Plaintiff

AADP "opposes" the other movants not by questioning their qualifications but merely by making the unsupported -- and incorrect -- claim that it is "precisely *the type* of institutional investor preferred by Congress to act as lead plaintiff." D.E. 27 at 6 (emphasis supplied). However, where courts have discussed a legislative preference for institutional investors to serve as lead plaintiff, that observation is usually made when the movants are large pension plans or retirement funds, not hedge funds. Indeed, pension plans or retirement funds were appointed as lead plaintiffs in *all* of the cases on which AADP relies – or selectively paraphrases – to support its purported "institutional" advantage. *See, e.g.*, *In re Adelphia Communications Corp. Sec. and Derivative Litig.*, 2005 WL 2126157, at *2 (S.D.N.Y. Sept. 1, 2005) ("In keeping with that congressional intent, courts consistently appoint **pension and retirement funds** as lead plaintiffs.") (emphasis added); *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (describing Arkansas Teacher Retirement System as "precisely the type of sophisticated institutional investor" preferred as lead plaintiff); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005) (appointing Steelworkers Pension Trust as lead plaintiff).

Similarly, in *In re UBS Auction Rate Secs. Litig.*, 2008 WL 2796592, at *4 n.4 (S.D.N.Y. July 16, 2008), the court rejected a movant group that included a "non-profit organization whose mission is to raise the status of the teaching profession and provide resources to the education community" which the group described as "an institutional investor that is precisely the type of lead plaintiff Congress sought to attract to the PSLRA process" – language strikingly similar to AADP's claim. *See also City of Monroe Employees' Retirement Sys. v. Hartford Financial Services Group, Inc.,* 269 F.R.D. 291, 294 (S.D.N.Y. 2010) (describing **pension fund** movants as "institutional

7

investors of the type that the drafters of the PSLRA sought to encourage.") (emphasis added); *In re Bank of America Corp. Secs., Derivative and ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("[Movants are] **large public pension funds** in the United States and Europe; they are thus the type of sophisticated institutional investors envisioned by Congress in the enactment of the PSLRA") (citation omitted) (emphasis added).

Even if one could call an investment vehicle for "20 super-rich investors" (D.E. 29 at Exh. B) an "institutional investor," the PSLRA, however, "does not limit the presumption of most adequate plaintiff to institutional investors. Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff." *Steiner v. Aurora Foods Inc.*, 2000 WL 33911305, at *3 (N.D. Cal. June 5, 2000); *see also In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor.").

### D. The Fact That AADP Purchased Stock In Yuhe's Secondary Offering Does Not Remedy The Fact That It Is Not a Qualified Candidate

In its opposition, AADP argues that it is a preferable lead plaintiff because it purchased Yuhe securities pursuant to a registration statement and prospectus dated October 20, 2010, providing it with standing to pursue a Section 11 claim under the Securities Act of 1933. D.E. 27 at 8. First, this fact is irrelevant as "the Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Cavanaugh*, 306 F.3d at 732 (emphasis added).

Second, the fact that AADP bought shares directly in the offering is not a legally relevant concern: courts in this and other districts have made clear, there is no requirement that to possess standing under Section 11 one must purchase shares directly in the offering. *See DeMaria v.*

8

*Andersen*, 318 F.3d 170, 176 (2nd Cir. 2003) (noting "the long-standing practice in this circuit permitting suit under §11 by those who can 'trace' their shares to the allegedly defective registration statement."); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999) ("Other circuits that have addressed this issue agree with our reading of the text and have uniformly allowed for recovery by purchasers in the aftermarket"). Because both AADP and MRMP purchased shares traceable to the offering at issue, *see id.* and D.E. No. 22 at Exh. B, AADP's purported important distinction is nothing of a sort.

### III. CONCLUSION

"If [AADP] were no longer in the running to be lead plaintiff, [MRMP], with the [second] greatest financial interest, would become the presumptive lead plaintiff. None of the parties have raised any concerns regarding [MRMP's] suitability to represent the class." *Applestein*, 2010 WL 3749406, at *5. Therefore, MRMP is the only movant before that Court that satisfies Rule 23's requirements, and its motion should be granted.

DATED: September 19, 2011             GLANCY BINKOW & GOLDBERG LLP

By:  *s/ Elizabeth M. Gonsiorowski*_____
Elizabeth M. Gonsiorowski (EG1212)
30 Broad Street, Suite 1401
New York, New York 10004
Telephone:  (212) 382-2221
Facsimile:   (212) 382-3944
Email:  egonsiorowski@glancylaw.com

-and-

GLANCY BINKOW & GOLDBERG LLP
Peter A. Binkow
Michael Goldberg
Robert V. Prongay
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067

       Telephone: (310) 201-9150
       Facsimile: (310) 201-9160

      *Proposed Lead Counsel*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO SOUTHERN DISTRICT OF NEW YORK LOCAL AND ECF RULES**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court.  I am over the age of 18 and not a party to the within action.  My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California  90067.

On September 19, 2011, I caused to be served the following documents:

1. **REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION OF MRMP-MANAGERS LLC FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

2. **REPLY DECLARATION OF ELIZABETH M. GONSIOROWSKI IN FURTHER SUPPORT OF MOTION OF MRMP-MANAGERS LLC FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVALOF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

By posting the document to the ECF Website of the United States District Court for the Southern District of New York, for receipt electronically by the parties pursuant to the Court's ECF Mailing List.  And on the following  non-ECF registered party:

Sara Beth Brody
Sidley Austin LLP
555 California Street, Suite 2000
San Francisco, CA 94104
(415) 772-1200
Email: sbrody@sidley.com

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service.  I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 19, 2011, at Los Angeles, California.

*S/ Elizabeth M. Gonsiorowski*
Elizabeth M. Gonsiorowski

## Mailing Information for a Case 1:11-cv-04526-JGK

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Craig Block**
  jblock@bermanesq.com,kdonovanmaher@bermanesq.com,ecf@bermandevalerio.com,bdentremont@bermanesq.com,norenstein@bermandevaleri

- **Anthony J. Costantini**
  ajcostantini@duanemorris.com

- **Elizabeth Mary Gonsiorowski**
  egonsiorowski@glancylaw.com,info@glancylaw.com

- **Roy Laurence Jacobs**
  rljacobs@pipeline.com

- **Suzan Jo**
  sjo@duanemorris.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Marvin Gerald Pickholz**
  mgpickholz@duanemorris.com

- **Kenneth Mark Rehns**
  krehns@cohenmilstein.com,efilings@cohenmilstein.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)